15-4032(L); 16-2690
*Victorinox v. The B&F System*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## AMENDED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of October, two thousand seventeen.

Present:
>       DENNIS JACOBS,
>       BARRINGTON D. PARKER,
>       DEBRA ANN LIVINGSTON,
>           *Circuit Judges*.

---

VICTORINOX AG, VICTORINOX SWISS ARMY, INC., WENGER NA, INC.,

>       *Plaintiffs-Counter-Defendants-Appellees*,

v.

15-4032-cv (L)
16-386-cv (CON)
16-2757-cv (CON)
16-2690-cv

B&F SYSTEM, INC., JOHN D. MEYER,

>       *Defendants-Counter-Claimants-Appellants,*

ABC CORPORATIONS, 1-10, JOHN DOES 1-10,

>       *Defendants*.

1

For Defendants-Counter-Claimants-
Appellants:

MICHAEL J. TRICARICO, Christopher R. Carroll, Douglas J. Steinke (*on the brief*), Carroll McNulty Kull LLC, New York, NY

JOSEPH H. LESSEM, Graubard Miller, New York, NY

For Plaintiffs-Counter-Defendants-
Appellees:

RORY J. RADDING, PHILIP TOUITOU, Harral S. Tenney IV, David Weild III (*on the brief*), Locke Lord LLP, New York, NY

Appeal from a judgment and two orders of the United States District Court for the Southern District of New York (Rakoff, *J.*).[1]

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART and VACATED AND REMANDED IN PART**.

Defendants-Appellants The B&F System, Inc. ("B&F") and John D. Meyer (collectively, "Defendants") appeal from a judgment of the district court granting summary judgment and awarding treble damages, attorneys' fees, and a permanent injunction to Plaintiffs Victorinox AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc. (collectively, "Plaintiffs" or "Victorinox") on their claim for trademark infringement under the Lanham Act, 15 § U.S.C. 1051 *et seq.* Defendants also appeal from an order denying them relief under Federal Rule of Civil Procedure 60, and an order denying their motion to disqualify counsel. Defendants contend that they did not infringe the trademark willfully or otherwise; that the mark should be cancelled because it was procured with fraudulent representations and because the mark serves a functional purpose; and that Plaintiffs' counsel, Locke Lord, should have been disqualified for

---

[1] This Summary Order addresses two separate appeals stemming from one underlying district court case.

2

concurrently representing both Plaintiffs and Defendants.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.      Trademark Infringement Claim

We review grants of summary judgment *de novo*.  *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 69 (2d Cir. 2015).   Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   *Sousa v. Marquez*, 702 F.3d 124, 127 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).   All ambiguities must be resolved, and all reasonable inferences drawn, in favor of the non-movant.   *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010).

We analyze a trademark infringement claim "in two stages, asking first whether the mark 'merits protection' and, second, whether the allegedly infringing use of the mark (or a similar mark) is 'likely to cause consumer confusion.'"   *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 224 (2d Cir. 2012) (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc*, 454 F.3d 108, 115 (2d Cir. 2006)).

### A.  First Stage

As to the first stage, "[a] certificate of registration with the [Patent and Trademark Office] is prima facie evidence that the mark is registered and valid (*i.e.*, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce."   *Lane Capital Mgmt. v. Lane Capital Mgmt.*, 192 F.3d 337, 345 (2d Cir. 1999). Defendants seek cancellation of Plaintiffs' trademark for red, oval-shaped scales on the sides of multifunction pocketknives on two grounds: fraud and functionality.

## 1. Fraud

"A third party seeking cancellation of a trademark based upon fraud in the application 'bears a heavy burden.'" *Quality Serv. Grp. v. LJMJR Corp.*, 831 F. Supp. 2d 705, 710 (S.D.N.Y. 2011) (quoting *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)). "The allegedly fraudulent statements may not be the product of mere error or inadvertence, but must indicate a 'deliberate attempt to mislead the [PTO].' Moreover, the knowing misstatement must have been with respect to a *material* fact—one that would have affected the PTO's action on the applications." *Orient Exp. Trading Co., Ltd. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988) (alteration in original) (quoting *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982)). Defendants claim that Plaintiffs (1) deliberately omitted information about other companies' use of the now-registered mark in its application to the PTO, and (2) selectively quoted from the *Forschner* litigation, cases about red multifunction pocketknives. *See Forschner Grp. v. Arrow Trading Co.*, 124 F.3d 402, 404 (2d Cir. 1997) ("Forschner II"); *Forschner Grp. v. Arrow Trading Co.*, 30 F.3d 348, 350 (2d Cir. 1994) ("Forschner I"). But, as the district court stated, other companies' use of the mark alone does not establish that Plaintiffs' use was not "substantially exclusive." Victorinox II J.A. 230 (quoting *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999)).[2] Moreover, Defendants failed to make any showing of the materiality of the alleged misstatements to the PTO's decision to register the mark. *See Orient Exp. Trading Co.*, 842 F.2d at 653. Thus, Defendants cannot obtain cancellation of Plaintiffs' trademark on fraud grounds.

---

[2] Victorinox I appendices refer to those filed in connection with docket numbers 15-4032 and 16-386, and Victorinox II appendices refer to those filed in connection with docket number 16-2690.

4

### 2. Functionality

Functionality "is an affirmative defense that [the Court] consider[s]" in the context of determining whether the infringing use of the trademark is "likely to cause consumer confusion." *Louboutin S.A.*, 696 F.3d at 224 (internal quotation marks omitted). Registration of the mark creates a presumption that the mark is not functional. *See id.* at 224. "A mark is aesthetically functional, and therefore ineligible for protection under the Lanham Act, where protection of the mark significantly undermines competitors' ability to compete in the relevant market." *Id.* at 222 (emphasis omitted).

Defendants first claim that the red handles at issue have utilitarian functionality because they allegedly increase the visibility of the knives and warn the user of the need to maintain vigilance when using a knife. However, as the district court noted, Defendants submitted no admissible evidence in support of these allegations. Defendants also argue that the red handles are aesthetically functional, relying solely on *Forschner II*. Even assuming *arguendo* that *Forschner II* characterized the red handles as aesthetically functional, Victorinox acquired a registered trademark for them after *Forschner II*. Defendants submitted no admissible evidence to rebut the presumption that the mark is not functional. *See Louboutin S.A.*, 696 F.3d at 224. Thus, we agree with the district court that Defendants cannot cancel Plaintiffs' trademark based on functionality.

### B. Second Stage

The second stage of the trademark infringement claim looks to "whether the junior user's use of its mark is likely to cause consumers confusion as to the origin or sponsorship of the junior user's goods." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). When considering this issue,

5

we generally examine the non-exclusive list of eight factors suggested by Judge Friendly in his landmark opinion in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961): the strength of the senior user's mark; the similarity of the parties' marks; the proximity of the parties' areas of commerce; the likelihood that the senior user will bridge the gap separating their areas of activity; the existence of actual consumer confusion; whether the junior user acted in bad faith or was otherwise reprehensible in adopting the mark; the quality of the junior user's product; and the sophistication of the relevant consumer group. The pertinence of individual factors varies with the facts of the particular case. Courts should not treat any one factor as dispositive, nor apply a "mechanical process" awarding judgment to the "party with the greatest number of factors weighing in its favor."

*Id.* (footnote omitted) (quoting *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000)).

Applying this standard, we agree with the district court that Plaintiffs proffered "overwhelming evidence of the likelihood of consumer confusion."[3]   Victorinox II J.A. 235–36. Given the similarities between the two products at issue—silver-colored tools folded between oblong red scales, a white cross-and-shield logo on one of the scales, notches for a toothpick and tweezers at one end[4]—the average consumer (who would not have the opportunity to compare the knives side-by-side) is unlikely to notice any differences.   Indeed, at least one consumer mistakenly returned Defendants' knife to Plaintiffs.

Further, as to bad faith, Plaintiffs convincingly contend that Defendants willfully infringed upon their registered mark by pointing to Defendants' pattern of duplicating Plaintiffs' products, and Defendants' continued production of the infringing knives after Customs seized the knives that gave rise to this litigation.   Defendants did not submit any evidence to create a

---

[3] The district court also found that Defendants' products were "counterfeit," Victorinox II J.A. 234–35, defined by the Lanham Act as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

[4] Some of Defendants' knives even came packaged in a rectangular silver-gray box, like Plaintiffs' Swiss Army knives.

6

genuine dispute as to these facts, but instead claim that they relied upon *Forschner II* (without advice of counsel) in producing red multifunction pocketknives. That contention fails to raise a genuine issue of material fact as to Defendants' bad faith. As discussed above, Plaintiffs acquired a registered trademark for the red scales after *Forschner II*. Defendants continued to reproduce knives with the red scales after that date. Accordingly, and given that Defendants have otherwise submitted insufficient evidence to raise a genuine issue of material fact as to any of the other seven *Polaroid* factors, we agree with the district court that Defendants knowingly and willfully infringed Plaintiffs' trademark as a matter of law.[5]

Defendants also argue that Plaintiffs are collaterally estopped from asserting their claims because of *Forschner II*. "The judicially-created doctrine of collateral estoppel, or issue preclusion, bars a party from relitigating in a subsequent proceeding an issue of fact or law that was clearly raised in a prior action where the party to be precluded . . . had a full and fair opportunity to litigate the issue, and a decision on that issue was necessary to support a valid and final judgment on the merits." *Envtl. Def. v. U.S. E.P.A.*, 369 F.3d 193, 202 (2d Cir. 2004) (citation omitted). Here, Plaintiffs were not party to the prior action, *Forschner II*. Defendants argue—for the first time on appeal—that Plaintiffs were in privity with The Forschner Group, Inc. ("Forschner"), a party to the prior action, because Forschner later became Victorinox Swiss Army, Inc. ("VSAI"), and Plaintiffs eventually acquired VSAI. "In those cases where we have applied the doctrine of privity to a person who was not represented by a

---

[5] For this reason, Defendants' laches defense is unavailable because Defendants lack clean hands. Defendants cite *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992), for the proposition that laches is still available to bar an award of profits even where there is willful infringement. This contention ignores the fact that the Lanham Act was subsequently amended to subject every award of monetary damages to "principles of equity," 15 U.S.C. § 1117, *e.g.,* unclean hands.

fiduciary or agent in the previous litigation, we have found that that person nonetheless exercised some degree of actual control over the presentation of a party's case at the previous proceeding." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 185 (2d Cir. 2003). Defendants did not allege—let alone proffer evidence—that Plaintiffs directed, controlled, or participated in Forschner's involvement in the *Forschner* cases.[6] Therefore, we decline to apply collateral estoppel here.

## C. Award of Profits

Defendants claim that the district court erred in awarding their profits to Plaintiffs based upon gross revenues without any deduction for costs. The district court excluded Defendants' evidence of costs because it was offered through an expert witness whose identity was not previously disclosed. Defendants concede that the district court "may have acted within its discretion in excluding the expert report," Defendants-Appellants' Victorinox I Brief at 61, but they nonetheless contend that the district court should have offered them an opportunity to prove costs or otherwise should have estimated costs on its own. In support of their contention,

---

[6] Defendants also argue that the district court erred in holding Defendant-Appellee John Meyer personally liable. The parties contend that, to recover against a corporate officer, a plaintiff must demonstrate that the officer was a "moving, active conscious force behind [the defendant corporation's] infringement." *Lee Myles Auto Group, LLC v. Fiorillo*, No. 10 Civ. 6267(PKC), 2010 WL 3466687, at *7 (S.D.N.Y. Aug. 25, 2010) (alterations in original) (*quoting Cartier v. Aaron Faber, Inc.,* 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007)). Defendants' principal argument is that Meyer became president of B&F long after the company had decided to sell red-handled multifunction pocketknives and use the Royal Crest logo. However, the evidence indicates that Meyer was involved in the company as early as 1987, when he allegedly attended a business meeting with his father. Meyer has also been the President of B&F since 2001, has worked in every department at B&F, determines whether to extend marks to different product lines, and reviews product designs developed by B&F. Further, after working with B&F's attorneys, Meyer authorized the continued sale of the knives after U.S. Customs' seizure. Thus, we agree with the district court that Meyer was an "active conscious force" behind Defendants' infringement.

8

Defendants point to a case where this Court reversed a district court's decision on damages because it did not estimate the defendant's costs "based on the evidence before it." *Murphy Door Bed Co., Inc. v. Int. Sleep Sys., Inc.*, 874 F.2d 95, 103 (2d Cir. 1989). Here, however, the district court had *no* evidence of costs before it, and it was Defendants' burden to produce that evidence. *See* 15 U.S.C. § 1117(a) ("[D]efendant must prove all elements of cost or deduction claimed."); *see generally Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (concluding the district court did not err in refusing to deduct expenses not proven by documentary evidence in entering default judgment for trademark infringement). Therefore, we see no reason to disturb the district court's decision not to estimate damages.

### D. The Scope of the Injunction

Defendants contend that the district court's injunction was overbroad, in that it prevents them from conducting legitimate business outside the scope of Plaintiffs' pocketknife-based claims. We agree. While a "party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party," *Guthrie*, 826 F.3d at 47 (quoting *Patsy's Brand, Inc. v. I.O.B. Realty*, 317 F.3d 209, 220 (2d Cir. 2003)), an injunction must nonetheless be "'narrowly tailored to fit specific legal violations' because the district court 'should not impose unnecessary burdens on lawful activity,'" *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999) (quoting *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)). Accordingly, "[a]n injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011). We review the scope of a district court's injunction for abuse of discretion,

9

which may consist of reliance upon a clearly erroneous factual finding or incorrect application of the law. *Guthrie*, 826 F.3d at 38.

Here, the district court's injunction principally enjoins Defendants from "manufacturing importing, advertising, marketing, promoting, supplying, distributing, drop-shipping, offering for sale, exporting, or selling any products which bear the Plaintiffs' Marks . . . or which bear any marks or designs that are identical with, substantially indistinguishable from, and/or confusingly similar to Plaintiffs' Marks." Victorinox II J.A. 54. The injunction, in turn, defines Plaintiffs' Marks as their trademark for "two elongated oval-shaped red scales with curved edges," as well as the "Swiss Army Trade Dress," consisting of the aforementioned scales, "a light-colored cross-and-shield device on one of the red scales, multiple silver metal implements that fold into the knife, and notches for tweezers (identified by the color gray) and for a toothpick (identified by a tan color) at one end of the knife." Victorinox II J.A. 54, 55.

While this section of the injunction is tailored to the infringement at issue, a separate section appears to sweep more broadly, enjoining Defendants from utilizing discrete elements of the Swiss Army Trade Dress in isolation. Specifically, the injunction enjoins Defendants from "engaging in any activity constituting unfair competition" with Plaintiffs including "the use of design elements" and "indicia associated with [Victorinox], such as the cross and shield device." Victorinox II J.A. 55; *see also* Victorinox II J.A. 56 (requiring that Defendants "remove any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Marks, . . . design elements, . . . and indicia associated with Plaintiffs, such as the cross and shield device"). The injunction may thus fairly be read as prohibiting (a) arguably legal conduct, namely the production of multifunction pocketknives that do not include the trademarked red scales or resemble Plaintiffs' products in any way except for the inclusion of one element of the Swiss

10

Army Trade Dress, *e.g.*, a grey notch for tweezers, and (b) conduct outside the scope of this litigation, *e.g.*, the production of other products (like kitchen utensils) that bear B&F's "Royal Crest" logo. *See Starter*, 170 F.3d at 299–300 (finding injunction overbroad where it "exceed[ed] the jury's findings of infringement" by covering the trademark at issue in combination with other designs and its use on all footwear rather than simply athletic footwear, issues which were "not at issue in [the] litigation"); *Waldman*, 43 F.3d at 785–86 (finding injunction overbroad where it enjoined the publishing of books similar to those published by the plaintiff as a whole, rather than false representations as to the books' source, because the former was a copyright issue for which no copyright had been registered); *Lipton v. Nature Co.*, 71 F.3d 464, 475 (2d Cir. 1995) (finding injunction overbroad that enjoined use of individual terms for identifying certain groups of animals, rather than their "compilation"). We therefore remand with instructions to amend the injunction so as to narrow its scope. *Cf. Guthrie*, 826 F.3d at 38–39 ("[O]ne must assess likelihood of confusion by reference to the marks in their entirety and not merely focusing on similar elements in marks which, taken as a whole, are not confusingly similar." (internal quotation marks omitted)).

## II.     Rule 60

The district court's initial infringement finding notwithstanding, Defendants maintain that it erred in refusing to vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b)(2) based on "newly discovered evidence." "Rule 60(b)(2) provides relief when the movant presents newly discovered evidence that could not have been discovered earlier and that is relevant to the merits of the litigation." *Boule v. Hutton*, 328 F.3d 84, 95 (2d Cir. 2003). Relief pursuant to Rule 60(b) should be granted "only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). In

11

particular, to prevail on a Rule 60(b) motion, "[t]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant [was] justifiably ignorant of them despite due diligence, (3) the evidence [was] admissible and of such importance that it probably would have changed the outcome, and (4) the evidence [was] not merely cumulative or impeaching." *Id.* at 392 (internal quotation marks omitted). We review the district court's denial of a Rule 60(b) motion for abuse of discretion. *Rodriguez v. Mitchell*, 252 F.3d 191, 200 (2d Cir. 2001).

Here, the "newly discovered evidence" consisted of two letters from counsel to Forschner and its affiliated companies to B&F's then-counsel in late 1986 and April 1987. According to Defendants, the letters demonstrate that Plaintiffs knew of Defendants' allegedly infringing knives long before they brought suit. We agree with the district court, however, that the evidence could have been discovered earlier because the letters were found in Defendants' former trademark attorney's correspondence files, which were in its possession and control. Defendants do not dispute this fact but instead contend that they did not look through those files because they believed that all of their important files had been transferred to subsequent counsel. Defendants have not demonstrated that this mistake constitutes justifiable ignorance. Therefore, the district court did not abuse its discretion in denying Defendants' Rule 60 motion.

## III. Disqualification of Locke Lord

In a separate appeal, Defendants argue that Locke Lord, Plaintiffs' counsel, should have been disqualified from representing Plaintiffs based on a period between January 12, 2015 and December 18, 2015 when it simultaneously represented Plaintiffs in this case and B&F on other matters. Concurrent representation of parties on opposing sides of a litigation is a prima facie conflict of interest. *See Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127,

12

133 (2d Cir. 2005). In such cases, to survive a disqualification motion, the attorney "must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Id.* (emphasis omitted) (quoting *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). When evaluating whether this presumption of shared confidences has been rebutted, "[c]ourts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint." *Id.* at 137. We review a district court's order regarding the disqualification of an attorney for an abuse of discretion. *GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010).

We, like the district court, are troubled by aspects of the record, including (1) the absence of informed consent for the concurrent representation, (2) the fact that Locke Lord only conducted client screens for only those clients who had recently generated more than $100,000 of revenue, and (3) the fact that the letter Locke Lord's counsel sent to B&F to notify them that the firm was ceasing representation was facially misleading. Nonetheless, we agree with the district court's conclusion that there was no actual or apparent conflict justifying disqualification. The concurrent representation began approximately eleven months after the district court entered judgment against Defendants, and there was no evidence that Plaintiffs' litigation team obtained any material information from the B&F litigation team. Further, the concurrent representation ended in December 2015, so there is "no actual or apparent conflict" now or in the future. *Hempstead*, 409 F.3d at 133 (emphasis omitted). Thus, the district court did not abuse its discretion in denying B&F's motion.

\* \* \*

13

We have considered the parties' remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the two orders, **AFFIRM** the judgment in part, and **VACATE AND REMAND** the judgment in part for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
