The **FORSCHNER GROUP, INC.;** Swiss Army Brands, Ltd., Plaintiffs–Appellants–Cross–Appellees,

v.

**ARROW TRADING CO., INC.,** Defendant–Appellee–Cross–Appellant.

**Nos. 1249, 1382, Dockets 96–7945(L), 96–7999(XAP).**

United States Court of Appeals, Second Circuit.

Argued April 3, 1997.

Decided Sept. 4, 1997.

Oliver P. Howes, Jr., Nims, Howes, Collison, Hansen & Lackert, New York City (Karen P. Clancy, Nims, Howes, Collison, Hansen & Lackert, New York City, on brief), for Plaintiffs–Appellants–Cross–Appellees.

Joseph H. Lessem, Cowan, Liebowitz & Latman, P.C., New York City (Louis S. Ederer, Cowan, Liebowitz & Latman, P.C., New York City, on brief), for Defendant–Appellee–Cross–Appellant.

BEFORE: OAKES, KEARSE and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiffs-appellants-cross-appellees The Forschner Group, Inc. and its subsidiary Swiss Army Brands, Ltd. (collectively "Forschner") appeal from a judgment and order of the United States District Court for the Southern District of New York (Preska, J.) enjoining defendant-appellee-cross-appellant Arrow Trading Co., Inc. ("Arrow") from advertising, promoting or selling any multifunction pocketknife represented as a "Swiss Army knife" unless: (1) the phrase is immediately preceded by or immediately followed by the name of the defendant in such a way as to clearly designate its origin; (2) the term "original" is not used to describe the knife; and (3) the language "the Swiss Army logo design is a trademark used under license by Arrow Trading Co., Inc.," or any similar language, is not used. Subsequent to the entry of the judgment, the district court found Arrow in contempt for its failure to comply with the judgment and order when Arrow promoted its knives at a trade show without properly designating their origin.

On appeal, Forschner challenges the scope of the district court's injunction, arguing that the district court erred in failing to enjoin Arrow from using the color red on its knife handle or in any marketing materials in conjunction with the phrase "Swiss Army knife." On cross-appeal, Arrow principally challenges the district court's subsequent interpretation of its judgment and order at the contempt hearing, arguing that the district court improperly enjoined Arrow from (1) using another name or mark to indicate the origin of its goods and (2) using the term "Swiss Army knife" in a purely generic sense. Because we find both Forschner's and Arrow's arguments unavailing, we affirm the district court in full. Inasmuch as the cross-appeal seeks relief from the order holding Arrow in contempt, we dismiss the cross-appeal for lack of appellate jurisdiction.

## BACKGROUND

This trademark and unfair competition case returns to this Court after vacatur and remand, see *Forschner Group, Inc. v. Arrow Trading Co.*, 30 F.3d 348 (2d Cir.1994), to the district court, see *Forschner Group, Inc. v. Arrow Trading Co.*, 904 F.Supp. 1409 (S.D.N.Y.1995). The undisputed facts of this appeal are set forth by the district court in its original decision, see *Forschner Group, Inc. v. Arrow Trading Co.*, 833 F.Supp. 385 (S.D.N.Y.1993), and familiarity therewith is presumed. We recapitulate only the facts relevant to this appeal.

Since the beginning of this century, two Swiss firms, Victorinox Cutlery Company ("Victorinox") and Wenger, S.A. ("Wenger"), have been the only purveyors of the well-known "Swiss Army knife" to the Swiss Armed Forces. Victorinox first designed its multifunction pocketknives in 1891, and Wenger began producing its knife in 1908. The

knives achieved prominence in the United States when American soldiers returning from Europe after World War II brought this well-crafted, intricate pocketknife used by the Swiss military home with them. The Swiss Army knife is renowned for its quality and durability, familiar red color, its multi-purpose blades and utensils, and its cross-and-shield insignia.

While the phrase "Swiss Army knife" has never enjoyed trademark protection, the two Swiss firms have agreed between themselves to share the use of the phrase. Victorinox has exclusive use of the term "original" Swiss Army knife, Wenger may call its knife "genuine," and their American distributors have accepted the same terms with respect to promoting the pocketknives. Forschner has continuously imported Swiss Army knives manufactured by Victorinox since 1950. Precise Imports Corporation, which is not a party to this litigation, distributes Wenger multifunction pocketknives in the United States.

Early in 1992, Arrow began marketing a red pocketknife containing multiple utensils manufactured in China (the "Arrow knife") and called it a Swiss Army knife. Despite a similar physical appearance, it is undisputed that the Arrow knife is comparatively inexpensive, is markedly inferior and fails to meet the standard of high quality found in a Swiss Army knife distributed by Forschner.

On September 22, 1992, Forschner commenced an action in the United States District Court for the Southern District of New York (Preska, *J.*) seeking to enjoin Arrow from marketing knives made in China as Swiss Army knives. The Complaint alleged three causes of action: Count I alleged misrepresentation as to the characteristics, qualities and origin of its goods pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (1988), a claim which included "passing off"; Count II alleged false advertising with respect to geographic origin and quality pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and Count III alleged unfair competition under New York State common law. After a bench trial, the district court found that Arrow's use of the phrase "Swiss Army knife" in connection with a multifunction pocketknife that was manufactured outside of Switzerland and was of inferior quality constituted a misrepresentation as to geographic origin and quality, in violation of § 43(a) of the Lanham Act. *Forschner*, 833 F.Supp. at 398. Thus, the district court enjoined Arrow's use of the phrase "Swiss Army knife" to advertise, promote or sell its knives. *Id.* at 398.

Arrow appealed and this Court vacated the district court's order, holding as a matter of law that the phrase "Swiss Army knife", as applied to a multifunction pocketknife that was not manufactured in Switzerland, was neither geographically nor qualitatively descriptive and thus was not deceptive under § 43(a) of the Lanham Act. *Forschner*, 30 F.3d at 350. This Court remanded the case for consideration of whether Arrow's remaining claims—essentially alleging unfair competition under both federal law and New York common law—had been proved so as to provide alternative grounds to deny, restrict or circumscribe Arrow's use of the phrase "Swiss Army knife." *Id.*

On remand, the district court rejected Forschner's trademark claims, but found the trade dress of Arrow's knife, particularly its red color, had substantially increased the likelihood of consumer confusion, and concluded that Forschner had adequately supported its allegations of false designation of origin, under 15 U.S.C. § 1125(a)(1)(A), and unfair competition, under New York common law. *Forschner*, 904 F.Supp. at 1429. In its decision, the district court defined the scope of relief to which Forschner was entitled as follows:

> [t]he relief granted should go only so far as to alleviate the source confusion caused by Arrow, and no further. The relief named here is designed to protect Forschner from unfair competition without unnecessarily burdening Arrow. I thus order that Arrow, although free to use the phrase "Swiss Army knife" to designate its product, must amply distinguish it from the Forschner product. Two salient means that come to mind are changing the color of its knife to a color not used by Forsch-

ner and adding its name to its designation of its knife....

*Id.* at 1428.

Thereafter, the parties submitted proposed judgments, and on April 24, 1996, the district court issued an Order and Judgment (based on Arrow's proposed order) enjoining Arrow from:

advertising, promoting, selling or offering to sell any multifunction pocketknife represented as a Swiss Army knife, UNLESS:

(1) the phrase "Swiss Army ·knife" is immediately preceded by (as in "Arrow Swiss Army Knife"), or immediately followed by (as in "Swiss Army Knife by Arrow" or "Swiss Army Knife from Arrow Trading Co."), the name of the defendant in such a way as to clearly designate its origin, although in no case should the size or presentation of the type designating origin be smaller or less prominent than the type used in the phrase Swiss Army knife;

(2) the term "original" is not used to describe the knife; and

(3) the language "the Swiss Army logo design is a trademark used under license by Arrow Trading Co., Inc.," or any similar language, is not used.

Thirteen days after entry of Judgment, Arrow promoted its knives as the "Classic" Swiss Army knife at the Premium Show at the Jacob Javits Center in New York. At this trade show, Arrow distributed a flyer which used the phrase "Swiss Army knife," without using any name or designation of origin either before or after it. While the words "Swiss Army knife" were displayed in the center of the heading with great prominence, the words "Arrow Trading Group" were exhibited in small letters in the upper right hand corner of the flyer. The text of the flyer used the term "Swiss Army knife" three times without the name "Arrow" before or after it. In addition, Arrow used a video at the trade show to promote its knives which used the phrase "Swiss Army knives" without mentioning the name "Arrow" at all.

On Forschner's motion, the district court held Arrow in contempt of its order, which required that any use by Arrow of the phrase "Swiss Army knife" must be preceded or followed by "Arrow or Arrow Trading Co." After an evidentiary hearing, the district court found Arrow's contempt to be willful.

On May 6, 1996, Forschner moved under Fed.R.Civ.P. 59(e) for an amendment of the Order and Judgment dated April 24, 1996 to enjoin Arrow from "[u]sing any shade of red on a knife handle or packaging or promotion or advertising materials." The district court denied the motion.

Forschner now appeals contending that the district court erred in declining to proscribe Arrow from using the color red on its multifunction pocketknife handles in conjunction with the phrase "Swiss Army knife." Arrow cross-appeals alleging principally that the district court erred in subsequently interpreting its Order and Judgment at the contempt hearing to impose restrictions that went beyond the scope of the injunction.

## DISCUSSION

It is well-settled that the essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation, *see Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971), and "to mould each decree to the necessities of the particular case," *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 806 (2d Cir.1981) (internal citation and quotations omitted). "A district court has a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct," *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 724 F.2d 352, 355 (2d Cir.1983) (citation omitted), and we will not disturb on appeal the relief granted unless there has been an abuse of discretion, *see Soltex Polymer Corp. v. Fortex Indus., Inc.*, 832 F.2d 1325, 1329–30 (2d Cir.1987).

## I. *The Color Red*

While the district court on remand found that Forschner was not eligible for trademark protection, the district court did find, and we agree, that Arrow violated § 43(a) of the Lanham Act and New York

common law by engaging in unfair competition. On appeal, Forschner argues that because the district court found, based on a multiplicity of similarities including the knife's red color, the trade dress of Arrow's product substantially increased the risk of consumer confusion as to its source, the injunction issued should have enjoined Arrow from using the color red on its multifunction knife in conjunction with the phrase Swiss Army knife. According to Forschner, the district court erred in declining to accord trade dress protection under federal and New York common law to the use of the color red on its multifunction pocketknives. We disagree.

The law of trademarks and unfair competition is shaped primarily by two competing public policies—namely, preventing consumer confusion on the one hand while promoting and rewarding healthy competition on the other. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767–68, 112 S.Ct. 2753, 2756–57, 120 L.Ed.2d 615 (1992). *See generally* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 1:1; 2:1 (4th ed.1997). With respect to the federal law of unfair competition, Section 43(a)(1) of the Lanham Act provides protection for unregistered trademarks and trade dress by holding liable in a civil action:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

15 U.S.C. § 1125(a)(1)(A).

This Section provides a statutory remedy to a party injured by a competitor's "false designation of origin" of its product, whether or not the party has secured a federally registered trademark. *See L. & J.G.*

*Stickley, Inc. v. Canal Dover Furniture Co.,* 79 F.3d 258, 262 (2d Cir.1996). Protection under this provision extends not only to the name of the product at issue, but may also extend to the product's "trade dress" which involves the total image and overall appearance of the good. *Compare Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 168 (2d Cir.1991) ("Section 43(a) extends protection to a product's 'trade dress'—the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics."), *with Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 380 (2d Cir.1997) ("courts have exercised particular 'caution' when extending protection to product designs").

To prevail in an action for trade dress infringement under § 43(a) of the Lanham Act, a plaintiff must demonstrate that (1) its trade dress is distinctive and (2) there exists a likelihood of confusion between its product and the alleged infringer's product. *See Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 967 (2d Cir.1995). Functional packaging and product design are not protected under § 43(a) of the Lanham Act, and functionality may be raised as a defense to a trade dress infringement action. *See Coach Leatherware Co.,* 933 F.2d at 171.

**a. *Distinctiveness***

The threshold issue in the case before us is whether the trade dress of Forschner's Swiss Army knife, in particular the red color as applied to its multipurpose pocketknife, identifies the particular source of the product or distinguishes it from other products. *See Two Pesos, Inc.,* 505 U.S. at 769, 112 S.Ct. at 2757–58. A trade dress may identify the producer in one of two ways: if the good is inherently distinctive or if the product has acquired distinctiveness to the consuming public through a secondary meaning associating the trade dress with the source of the good. *See id.; Paddington Corp. v. Attiki Importers & Distribs., Inc.,* 996 F.2d 577, 582–83 (2d Cir.1993).

Under the rubric of inherent distinctiveness, the focus of the inquiry is whether or not the trade dress of a product serves

primarily as an indication of origin, such that consumers will readily rely on it to distinguish the product from those of competing manufacturers. *See L. & J.G. Stickley, Inc.,* 79 F.3d at 262; *Paddington Corp.,* 996 F.2d at 585. Thus, a trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source of a product". *Two Pesos, Inc.,* 505 U.S. at 768, 112 S.Ct. at 2757.

■ As an element of trade dress, however, we observe that color is never inherently distinctive, but is capable of identifying a product's source and may be a protected trademark only when it has attained secondary meaning and has come to be associated in the consuming public's mind with a single source of origin. *See Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 163, 115 S.Ct. 1300, 1303, 131 L.Ed.2d 248 (1995).

■ Association of origin reflects the goodwill a manufacturer has built up in its product such that prospective consumers associate this product feature with the producer rather than with the product itself. *See Inwood Lab., Inc. v. Ives Lab., Inc.,* 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982). In a case involving secondary meaning, the crucial question is "whether the public is moved in any degree to buy an article because of its source." *American Footwear Corp. v. General Footwear Co.,* 609 F.2d 655, 663 (2d Cir.1979); *see Coach Leatherware Co.,* 933 F.2d at 168.

With these principles in mind, we find that Forschner has failed to establish that the color red on the handles of Forschner's multifunction pocketknife has acquired secondary meaning. The use of the color red on handles of multifunction pocketknives does not indicate in the minds of the public a single source of origin in Victorinox. The record indicates that for nearly forty years, at least two different and competing Swiss companies, Victorinox and Wenger, have manufactured Swiss Army knives with red handles and the cross-and-shield logos for distribution in the United States. For nearly the same length of time, an American company, Colonial, has marketed a multifunction pocketknife with red handles and a two bar cross design under its SWISS MASTER

trademark, and the purchasing public has referred to its product as a Swiss Army knife. As such, the trade dress consisting of the color red as applied to multifunction pocketknives does not serve to primarily designate Forschner as the single source of the product nor does it serve to distinguish Forschner's product from those of its competitors.

Although the failure to establish that Forschner's trade dress is distinctive forecloses a claim of unfair competition under § 43(a) of the Lanham Act, this does not conclude our inquiry. Unlike unfair competition claims brought under federal law, a showing of distinctiveness is not required to prove unfair competition under New York State common law.

#### b. *Likelihood of Confusion*

■ Under New York common law, the essence of unfair competition is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 34 (2d Cir.1995) (quotations and citations omitted). A likelihood of confusion exists when consumers are likely to assume that a product is associated with a manufacturer other than its actual source because of similarities between the related goods. *See id.* at 34.

■ Significantly, we held in our previous ruling that "Arrow's use of the phrase Swiss Army knife is permissible only to the extent that such use does not engender a likelihood of confusion as to the source of Arrow's product." *Forschner,* 30 F.3d at 360; *see also Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 939 (7th Cir.1986); *Metric & Multistandard Components Corp. v. Metric's, Inc.,* 635 F.2d 710, 714 (8th Cir. 1980). Accordingly, while Arrow may use the phrase Swiss Army knife to denote its multifunction pocketknives, it may be enjoined from passing its product off as its competitor's. *See Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 119, 59 S.Ct. 109, 113–14, 83 L.Ed. 73 (1938); *see also King–*

*Seeley Thermos Co. v. Aladdin Indus., Inc.,* 321 F.2d 577, 581 (2d Cir.1963).

■ In examining whether there is a likelihood of confusion, we are not so much concerned with dissecting the competing trade dress and enumerating discrete points of similarity, but rather we focus on the overall image created. *See Merriam–Webster, Inc. v. Random House, Inc.,* 35 F.3d 65, 70–72 (2d Cir.1994). As the district court found, the combination of Arrow's use of the phrase Swiss Army knife to describe its multifunction knife and its use of a similar trade dress (consisting of the cross-and-shield logo and red handles) added up to an actionable "cumulative absence of differentiation." *Forschner,* 904 F.Supp. at 1424 (internal quotations and citations omitted).

To "alleviate the source of confusion caused by Arrow" and to "protect Forschner from unfair competition without unnecessarily burdening Arrow," the district court fashioned an injunction requiring, *inter alia,* that Arrow clearly designate its origin in the same size or presentation as the type used for the phrase Swiss Army knife on its multifunction knives. *Forschner,* 904 F.Supp. at 1428. While the district court initially observed that "changing the color of its knife to a color not used by Forschner" was another means to distinguish Arrow's product from Forschner's knives, the district court declined to issue an injunction against the use of the color red. *Id.*

The focal point of Forschner's appeal is the allegedly predatory use of the color red on Arrow's multifunction knives. In order to establish that a likelihood of confusion remains unless the injunction is expanded to prohibit Arrow from using the color red, Forschner would have to demonstrate that prospective consumers—(1) seeing a display of multifunction pocketknives; (2) with red handles (and a cross-and-shield insignia); (3) and with the phrase "Arrow Swiss Army Knife" or "Swiss Army Knife by Arrow" or "Swiss Army Knife from Arrow Trading Co." embossed on the knife—would likely be misled into purchasing an Arrow knife instead of a Forschner Swiss Army knife. Such a scenario appears unlikely.

The color red does not act as a symbol to distinguish Forschner's knives from its competitors, nor does it identify Forschner as the source because, as discussed above, there are numerous companies that manufacture red multifunction pocketknives. In addition, even assuming arguendo the identical appearances of two multifunction pocketknives, such designs, particularly the use of the color red, are insufficient by themselves to show confusion as to source as a matter of law. A trade dress claimant's right is solely in protecting its identity as the originator of its product. *See* Restatement (Third) of Unfair Competition § 16 cmt. b (1995).

A careful review of the law of unfair competition and the record in this case satisfies us that the district court was within its discretion and devised an appropriate injunction. The district court's injunction precludes Arrow from using the phrase Swiss Army knife unless it adds its name to its designation of its knife with equal prominence. It cannot be said that the district court abused its discretion in concluding that this restriction would distinguish Arrow's knife from the Forschner product and thereby alleviate the risk of confusion as to source of origin. *See Kellogg Co.,* 305 U.S. at 120–21, 59 S.Ct. at 114–15 (finding prominent display in bold script of Kellogg name on packages of shredded wheat helped distinguish its product); *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1045–46 (2d Cir.1992) (finding despite similar trade dress elements, "the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion").

Moreover, to the extent the public has come to view red handles as a familiar feature of Swiss Army knives, we find that because foreclosing Arrow's use of the color red would significantly restrict the range of alternative colors necessary for Arrow and other competitors to compete effectively in the Swiss Army knife market, the district court did not abuse its discretion. *See Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.,* 916 F.2d 76, 81 (2d Cir.1990) ("[W]here an ornamental feature is claimed as a trademark and trademark protection would significantly hinder competition by

limiting the range of adequate alternative designs, the aesthetic functionality doctrine denies such protection.").

In summary, by striking a reasonable balance between Arrow's and Forschner's conflicting interests, focusing upon hindrances to legitimate competition as well as assuring sufficient product differentiation to avoid source confusion, the district court did not abuse its discretion in devising an appropriate injunction.

## II. *The District Court's Subsequent Interpretation of the Injunction*

 Arrow's principal challenge on cross-appeal concerns the district court's subsequent interpretation of its judgment and order at the contempt hearing. While Arrow acknowledges that the district court's finding of contempt for violating its order is not yet final because the district court has not ascertained the amount of damages or attorneys' fees to be awarded to Forschner, Arrow maintains that the predicate to the court's finding of contempt, namely the district court's interpretation of the injunction, is a proper subject of a cross-appeal from the judgment itself. We disagree.

Our appellate jurisdiction is limited to final decisions. 28 U.S.C. § 1291. It is a well-established rule of appellate jurisdiction that "a final order is one that conclusively determines the rights of the parties to the litigation, leaving nothing for the district court to do but execute the order." *In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir. 1992). Thus, where liability has been decided but the extent of damages remains undetermined, there is no final order. *See Republic Natural Gas Co. v. Oklahoma*, 334 U.S. 62, 68, 68 S.Ct. 972, 976–77, 92 L.Ed. 1212 (1948) ("[T]he requirement of finality has not been met merely because the major issues in a case have been decided and only a few loose ends remain to be tied up—for example, where liability has been determined and all that needs to be adjudicated is the amount of damages.").

 Moreover, an order adjudging a party in contempt unaccompanied by sanctions is not final and therefore is not appealable.

*See In re Fugazy Express, Inc.*, 982 F.2d at 775; *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 17 (2d Cir.1992); *see also In re Irving*, 600 F.2d 1027, 1031 n. 1 (2d Cir.1979); *Comptone Co. v. Rayex Corp.*, 251 F.2d 487, 488 (2d Cir.1958) (per curiam) ("[N]o penalty has been imposed, and the contempt order remains merely a finding, without judgment thereon, subject to modification, prior to judgment. Since the contempt finding . . . is not a final decision, it is not appealable under 28 U.S.C. § . . . 1291.") (citation omitted).

The district court's contempt order in the case before us does not meet this standard of finality. The order of contempt stated "Plaintiff may submit affidavits with respect to its cost of prosecuting the contempt within ten days. Defendant will have ten days to comment with respect to the reasonableness of those costs, and a finding will be made thereafter." The language clearly contemplates an assessment of damages, and Arrow acknowledges in its brief that the amount of damages and attorneys fees has yet to be determined. Thus, the district court's contempt order is not an appealable final decision because no assessment of sanctions has occurred.

Nor does the district court's order qualify as an appealable order under the collateral order doctrine. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978) (To be immediately appealable, "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

Accordingly, so much of the cross-appeal as seeks relief from the order holding Arrow in contempt is dismissed for lack of appellate jurisdiction.

We have examined all of the parties' remaining arguments on appeal and cross-appeal and find them to be without merit.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the district court. We dismiss

so much of the cross-appeal as seeks relief from the contempt order for lack of appellate jurisdiction.