**VICTORINOX AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc., Plaintiffs,**

**v.**

**The B & F SYSTEM, INC., John D. Meyer, ABC Corporations 1–10, and John Does 1–10, Defendants.**

**The B & F System, Inc., Counterclaim Plaintiff,**

**v.**

**Victorinox AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc., Counterclaim Defendants.**

No. 13–cv–4534 (JSR).

United States District Court, S.D. New York.

Signed June 22, 2015.

David III Weild, Harral Straat Tenney, Edwards Wildman Palmer LLP, Rory J. Radding, Locke Lord LLP, New York, NY, Jenny Theresa Slocum, Dickinson Wright PLLP, Washington, DC, for Plaintiffs/Counterclaim Defendants.

David Max Dahan, Frank Joseph Colucci, Colucci & Umans, New York, NY, Natalma M. McKnew, Smith Moore Leatherwood LLP, Greenville, SC, for Defendants/Counterclaim Plaintiff.

*MEMORANDUM*

JED S. RAKOFF, District Judge.

Plaintiffs Victorinox AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc., makers of the iconic Swiss Army Knife, bring this suit against defendants B & F System, Inc. and John D. Meyer, asserting various state and federal trademark claims. Plaintiffs moved for summary

judgment on Count I (trademark infringement and counterfeiting under 15 U.S.C. § 1114), Count III (false designation of origin and unfair competition under 15 U.S.C. § 1125(a)), and Counts V and VI (trademark infringement and unfair competition under New York common law) of their complaint. Defendants cross-moved for summary judgment dismissing the complaint and granting their counterclaims. The Court issued a "bottom line" Order granting plaintiffs' motion and denying defendants' motion. This Memorandum sets forth the reasons for those rulings.

"Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.2003). Where the parties cross-move for summary judgment, the Court analyzes each motion separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Novella v. Westchester Cnty.*, 661 F.3d 128, 139 (2d Cir.2011).

The following facts are undisputed unless otherwise noted.[1] Plaintiffs' Swiss Army Knife, which was first offered for sale in 1897, features, *inter alia,* two red elongated oval-shaped plastic scales (*i.e.,* handles), a light-colored cross-and-shield device on one of the red scales, multiple silver metal implements that fold into the knife, and notches for tweezers (identified by the color gray) and for a toothpick (identified by a tan color) at one end of the knife. Collectively, these features comprise the "Swiss Army Trade Dress." *See* Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts dated Dec. 2, 2013 ("Pl. Rule 56.1") ¶¶ 1–2, 56. One element of this Trade Dress, namely the two elongated oval-shaped red scales with curved edges, is protected by U.S. Trademark Registration No. 3,546,920 (the "Red Mark"). *Id.* ¶ 3, 53.

Defendants, for their part, sell multifunction pocket knives under the name "Royal Crest." *See* Defendants' Local Rule 56.1 Statement of Undisputed Facts dated Dec. 2, 2013 ("Def. Rule 56.1") ¶ 20. Defendants' knives also contain silver metal tools sandwiched between two elongated oval-shaped red scales with curved edges. Pl. Rule 56.1 ¶¶ 54. The accused knives bear a device that plaintiffs describe as a white cross and shield, and defendants describe as a silver shield with an "X" and a crown. *Id.* ¶ 55; Defendants' Responses to Pl. Rule 56.1 ¶ 55.

■The Court first considers defendants' motion for summary judgment. Defendants' primary contention is that plaintiffs' claims are barred by the doctrine of laches, an equitable defense that applies where a plaintiff fails to bring suit in a timely manner. In response, plaintiffs seek summary judgment that none of their claims is barred by laches.[2] Laches is established by demonstrating that the "plaintiff had knowledge of defendant's use

---

1. In many instances, in response to the particular allegations in plaintiffs' Local Rule 56.1 Statement (all of which are supported by duly cited evidence), defendants' responsive Rule 56.1 Statement contains only conclusory denials and fails to cite record evidence as required by Local Rule 56.1(d). Where this is so, the corresponding plaintiffs' statements are deemed undisputed. *See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, No. 00–cv–4763, 2006 WL 2136249, at

*3 (S.D.N.Y. Aug. 1, 2006) (striking portions of opposition to Rule 56.1 Statement that failed to meet requirements of Local Rule 56.1).

2. Plaintiffs sought summary judgment of no laches in their opposition to defendants' motion. Since laches is an affirmative defense that must be first raised by defendants, this timing was entirely proper, and defendants recorded no objection to it.

of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time." *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir.1980). Proof of actual knowledge of the alleged infringing use is not necessary. Rather, plaintiffs are charged "with such knowledge as [they] might have obtained upon inquiry, provided the facts already known by [them] were such as to put upon a man of ordinary intelligence the duty of inquiry." *Polaroid Corp. v. Polarad Elecs. Corp.*, 182 F.Supp. 350, 355 (E.D.N.Y.1960), *aff'd*, 287 F.2d 492 (1961).

█ Defendants concede that plaintiffs did not actually know about the accused products until a shipment was detained by U.S. Customs agents in Dallas in March 2013, *see* Complaint dated June 28, 2013 ("Compl.") ¶¶ 2, 33. They argue instead that plaintiffs should have known about the alleged infringing use years, even decades, earlier. Defendants contend that they have been producing the accused knives since 1983 (branded as Royal Crown since 1987), that they openly advertise their products through catalogs, the internet, and trade shows, and that they have sold some 2,500,000 units over the past thirty years through various major retail outlets. They contend that plaintiffs could have discovered the alleged infringing use had they policed their mark effectively.

█ However, defendants fail to clear the critical threshold hurdle applicable to any party asserting an equitable defense—clean hands. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). In the trademark context, it is well established that "laches is not a defense against injunctive relief when the defendant intended the infringement." *Harlequin Enters. Ltd. v. Gulf & W. Corp.*, 644 F.2d 946, 950 (2d Cir.1981). In other words, a laches defense is not available to a defendant who "intentionally traded off the [plaintiff's] name and protected products." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir.2000); *see also Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir.1999) ("[D]efendant's intention to confuse undermines any claim of good faith.").

Even viewing the evidence in the light most favorable to defendants, the conclusion that defendants intentionally infringed plaintiffs' trademark and trade dress is inescapable. The similarity between the accused knives and plaintiffs' Swiss Army Knives is both striking and telling.[3] The accused knife copies the Swiss Army Knife element-for-element, from the oblong shape, to the identical placement of the toothpick and tweezer notches, to the distinctive red hue. Like the Swiss Army Knife, moreover, at least some models of defendants' knives come packaged in a rectangular silver-gray box. *See* Declaration of H. Straat Tenney dated Dec. 3, 2013 ("Tenney Decl.") Exs. 61, 63. Even defendants' "Royal Crest" logo—despite certain minor alterations such as the addition of the crown and the forty-five-degree rotation of the cross—is substantially similar to plaintiffs' cross-and-shield logo, and is placed in the same location on the handle.[4] Such overwhelming resemblance between the accused product and the Swiss Army Knife could only have been the product of intentional mimicry. *See Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*,

---

3. The Court received and viewed actual examples of both knives, as well as color photographs of the same.

4. Defendants' "Executive Gift Set" includes a separate medallion bearing a logo that is even more similar to plaintiffs' in that the white cross is oriented vertically on the red shield and the crown is omitted.

No. 13–CV–2451, 2014 WL 3887515, at *4 (E.D.N.Y. Aug. 5, 2014) (holding that allegation that defendant's packaging contained marks that were "either identical to or substantially indistinguishable from" plaintiffs' trademarks was sufficient to plead bad faith).

Nor is there any question that defendants were aware of plaintiffs' Swiss Army Knives before commencing sale of the accused knives. Defendant B & F System's former president, William Meyer, admitted as much, and defendant John Meyer even owned a Swiss Army Knife. Tenney Decl. Ex. 41 at 20–21; *id.* Ex. 40, at 165. *See also Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 259 (2d Cir.1987) ("Where we can perceive freedom of choice with full knowledge of a senior user's mark, we can readily read into defendant's choice of a confusingly similar mark the intent to get a free ride upon the reputation of a well-known mark."). Moreover, defendants admittedly continued their allegedly infringing use, without advice of counsel, even after U.S. Customs seized their products and alerted plaintiffs to their activities in March 2013. *Id.* Ex. 40, at 94; *see also Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.,* 689 F.Supp.2d 585, 600 (S.D.N.Y.2010), *amended on reconsideration* (Mar. 23, 2010) (finding that defendant's continued sale of counterfeit goods after receiving cease-and-desist letter established willfulness). Defendants' persistence in selling near-identical knives despite having actual knowledge of plaintiffs' trademark rights is strong evidence of their intent to infringe.

Indeed, defendants have engaged in a pattern of copying plaintiffs' products that goes well beyond the knives at issue in this suit. For example, plaintiffs now own the registered trademark, "SWISS ARMY."

*Id.* Ex. 75. In a catalog dated 1987, however, defendants actually described their knife as a "Swiss Army Knife." Tenney Decl. Ex. 50. After being advised that they could not use that term, defendants adopted "Army Knife" to describe their products because, as defendant John Meyer acknowledged, it was the closest to SWISS ARMY that they believed they could safely come (again, without advice of counsel). *Id.* Ex. 40, at 57, Ex. 64. Similarly, defendants marketed and sold an "Alpine Army" watch that is virtually identical to plaintiffs' trademarked Swiss Army Watch. *Id.* Exs. 55–56, 74. Defendant John Meyer further admitted that B & F produced a knife with a clock embedded in the handle after seeing one produced by plaintiffs. *Id.* Ex. 40 at 174. Defendants' repeated efforts to approximate plaintiffs' trademarks and trade dress, rather than attempting to differentiate their own products, evinces their intent to trade on plaintiffs' goodwill and to confuse and deceive the public. *See Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.,* 457 F.Supp. 1090, 1099 (S.D.N.Y.1978) *aff'd sub nom. Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.,* 607 F.2d 995 (2d Cir.1979).

Accordingly, the Court finds that any reasonable factfinder would conclude that defendants' infringement was intentional and that defendants are therefore barred from invoking the doctrine of laches. *Hermes,* 219 F.3d at 107 ("[I]ntentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense.").

In addition to their claim of laches, defendants further moved for summary judgment for cancellation of the Red Mark on the ground that it was procured through fraud, and plaintiffs, in turn, sought summary judgment on their contention of no fraud.[5] A party seeking

---

5. It bears noting that defendants did not plead a counterclaim for cancellation based

cancellation of a trademark based on fraud bears a "heavy burden." *Quality Serv. Grp. v. LJMJR Corp.*, 831 F.Supp.2d 705, 710 (S.D.N.Y.2011). "Misstatements in registration applications will cause cancelation only if they were made with knowledge of their falsity and if they were material to the decision to grant the registration application." *Ushodaya Enterprises, Ltd. v. V.R.S. Int'l, Inc.,* 63 F.Supp.2d 329, 335 (S.D.N.Y.1999).

Defendants contend that the following representation made in Victorinox's application to the Patent and Trademark Office ("PTO") was fraudulent: "The Mark has become distinctive of the identified goods through the Applicant's substantially exclusive and continuous use and promotion of the mark in commerce as an indication of source since at least as early as October 30, 1936." Specifically, they contend that Victorinox deliberately omitted information regarding other companies' use of the Red Mark. However, the fact that others used the mark does not, standing alone, establish that the applicant's use was not "substantially exclusive." *L.D. Kichler Co. v. Davoil, Inc.,* 192 F.3d 1349, 1352 (Fed. Cir.1999). Moreover, defendants have not submitted any independent evidence of fraud, relying exclusively on the Second Circuit's opinion in *Forschner Group, Inc. v. Arrow Trading Co.,* 124 F.3d 402 (2d Cir.1997). Plaintiff in that case, the U.S. distributor of Victorinox products, argued that defendant, an importer of Chinese multifunction pocketknives, should be enjoined from using the color red on its knife handle in conjunction with the phrase "Swiss Army knife." *Id.* at 404. The

Second Circuit found that "for nearly forty years, at least two different and competing Swiss companies, Victorinox and Wenger, have manufactured Swiss Army knives with red handles and the cross-and-shield logos for distribution in the United States," and concluded that the "use of the color red on handles of multifunction pocketknives does not indicate in the minds of the public a single source of origin in Victorinox." *Id.* at 408. The *Forschner* decision, defendants argue, establishes that plaintiffs' representation that they made "substantially exclusive" use of the mark was fraudulent.

However, neither party in this case was a party to the *Forschner* case and therefore neither can be bound by that court's findings. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 9, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."). In any event, *Forschner* involved a claim of unfair competition, which, as the district court noted, "by definition does not focus on the ... registrability of the plaintiff's mark." *Forschner Grp., Inc. v. Arrow Trading Co.,* 904 F.Supp. 1409, 1415 (S.D.N.Y.1995) *aff'd,* 124 F.3d 402 (2d Cir.1997). The focus of the *Forschner* court's analysis was not on whether Victorinox's use was "substantially exclusive" for the period that Victorinox subsequently claimed in its application to the PTO. Furthermore, between the *Forschner* decision in 1997 and plaintiffs' filing of their registration in

on fraud. *See* Defendant's Answer, Affirmative Defenses and Counterclaims dated Aug. 5, 2013 ¶¶ 11–20 (pleading counterclaims for cancellation based on lack of secondary meaning and functionality). Nonetheless, the counterclaims did allege the same facts that defendants now contend prove their fraud theory, and therefore gave plaintiffs sufficient

notice of defendants' claims. *Lewis v. Nissan N. Am., Corp.,* No. 04–CV–562, 2004 WL 1277999, at *2 (S.D.N.Y. June 9, 2004) *report and recommendation adopted,* No. 04–CV–562, 2004 WL 1494603 (S.D.N.Y. July 6, 2004) ("Factual allegations alone are what matters.").

2005, Victorinox and Wenger, the primary manufacturers of Swiss Army Knives mentioned in *Forschner*, merged into common ownership. Thus, even if *Forschner* were binding on plaintiffs in this case—which it is not—it would not, standing alone, prove defendants' allegations of fraud.

Similarly, with respect to Victorinox's alleged failure to disclose Wenger's historical right to use the Red Mark, defendants again fail to cite record evidence supporting their contention, and thus fail to carry their burden on summary judgment. Because defendants failed to proffer any evidence in support of any aspect of their claim of fraud, the Court denied defendants' motion and granted plaintiffs' motion for summary judgment of no fraud.

Defendants' final motion for summary judgment—to which they devote but a single page of their brief, and which they appear to abandon in their reply brief—is that they are entitled to summary judgment that there is no evidence of likelihood of consumer confusion. For reasons that will be discussed in detail with respect to plaintiffs' parallel motion for summary judgment on their claim of consumer confusion, defendants' motion is again denied.

The Court turns next to plaintiffs' motion for partial summary judgment on their federal law Counts I (trademark infringement and counterfeiting) and III (false designation of origin and unfair competition).

■ In order to prove a claim of trademark infringement under either Section 32 or Section 43 of the Lanham Act, 15 U.S.C. §§ 1114, 1125, a plaintiff must prove, first, that the mark is entitled to protection, and second, that defendant's use of the mark is likely to cause consumers "confusion as to the origin or sponsorship of defendant's goods." *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir.2003).

■ As to the protectibility of the mark, a "certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir.1999). Thus, plaintiffs' federal trademark registration creates a presumption that the mark is protectible.

■ In addition, plaintiffs have proffered compelling evidence that the Red Mark and Swiss Army Trade Dress have acquired secondary meaning. The Second Circuit has identified six non-exclusive factors that are relevant to the acquired distinctiveness or secondary meaning of a mark: (1) advertising expenditures, (2) unsolicited media coverage, (3) consumer studies linking the mark to a source, (4) sales successes, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the use of the trademarks. *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F.Supp.2d 273, 294 (S.D.N.Y.2002) (citing *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1222 (2d Cir.1987)).

Plaintiffs have proffered undisputed evidence proving each of these factors. Plaintiffs' evidence demonstrates: that plaintiffs have invested over $50 million in advertising in the United States, and that their advertisements have appeared in numerous nationally circulated publications, Pl. Rule 56.1 ¶¶ 7–13; that the Swiss Army Knife has received extensive unsolicited media coverage, ranging from its selection for the permanent collection of the Museum of Modern Art in New York to its appearance in the opening credits of the television series "MacGyver," *id.* ¶¶ 14–34; that consumer studies show a significant association between the color red and the Swiss Army brand, *id.* ¶¶ 35–39; that

plaintiffs have sold over 100 million Swiss Army Knives in the United States since 1936, *id.* ¶ 41; that plaintiffs have stopped third parties from selling infringing red-handled knives, *id.* ¶¶ 44–48; and that plaintiffs have used the Red Mark and Swiss Army Trade Dress for over 70 years, *id.* ¶ 49. Thus, the Court has no difficulty in concluding that the Red Mark and Swiss Army Trade Dress are valid and protectible as a matter of law.

As to consumer confusion, courts within this Circuit generally assess this claim by considering the eight factors set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.1961) (Friendly, J.):

> (1) the strength of the plaintiffs mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products or services; (4) the existence of actual confusion; (5) the likelihood that the plaintiff will 'bridge the gap' between the two markets; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the purchasers.

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 256–57 (2d Cir.1987) (quoting *Polaroid*, 287 F.2d at 495). However, the analysis is far simpler where the accused products are counterfeit. The Lanham Act defines counterfeit as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Because counterfeits are "by their very nature likely to cause confusion," full analysis of the *Polaroid* factors is unnecessary. *See Coach, Inc. v. Horizon Trading USA Inc.*, 908 F.Supp.2d 426, 433–34 (S.D.N.Y.2012). As discussed above, defendants' knives are substantially identical to plaintiffs' Swiss Army Knife, and therefore are counterfeits whose tendency to cause confusion is self-evident.

Moreover, even if the accused knives were not counterfeits (which they are), plaintiffs have proffered overwhelming evidence of the likelihood of consumer confusion:

**■** First, as discussed above, there is ample evidence that the Red Mark and Swiss Army Trade Dress are famous and have acquired secondary meaning.

Second, the similarities between the two products are indisputable. Both knives have silver-colored tools folded between oblong red scales, a cross-and-shield logo on one of the scales, and notches for toothpick and tweezers at one end. As the average consumer would not have the opportunity to perform a side-by-side comparison, any minor differences, such as the minor tweaks that defendants have made to the logo, would likely go unnoticed. *See Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F.Supp.2d 217, 245 (S.D.N.Y.2004).

Third, as to competitive proximity, both products are multifunction pocketknives. They serve identical functions and compete in the same market. *Id.* at 246 ("Proximity is measured by 'the nature of the products themselves and the structure of the relevant market.'"). Thus, this factor weighs heavily in favor of finding likelihood of confusion.

Fourth, on at least one occasion, a consumer returned one of defendants' allegedly infringing knives to Victorinox for repair. *See* Tenney Decl. Ex. 42. "It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir.2003) (citation omitted).

Fifth, because the products already compete in the same market, "there is no gap [between the senior and junior users' respective markets] to bridge," and this fac-

tor is therefore irrelevant. *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,* 800 F.Supp.2d 515, 531 (S.D.N.Y.2011) *aff'd,* 511 Fed.Appx. 81 (2d Cir.2013).

Sixth, as discussed, plaintiffs have demonstrated that defendants' use of their marks was intentional and in bad faith as a matter of law. *See Venetianaire Corp. of Am. v. A & P Imp. Co.,* 302 F.Supp. 156, 160 (S.D.N.Y.1969) *aff'd,* 429 F.2d 1079 (2d Cir.1970) ("The slavish copying of plaintiff's trade dress would indubitably require a finder of fact to conclude, as a matter of law, that defendant, by its imitation of plaintiff's trademark, intended to cause confusion.").

Seventh, defendants admit that their knives are not of equal quality to Swiss Army Knives. Tenney Decl. Ex. 43, at 55. Thus, confusion regarding the origin of the accused knives is likely to tarnish plaintiffs' reputation. *See Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 398 (2d Cir.1995).

Eighth, and finally, because defendants' products are "relatively low-priced and subject to impulse buying"—the suggested retail price for a 7–function knife is just $5.95, *id.* Ex. 49—consumers are unlikely to engage in any substantial research before purchasing them. *See Melodrama Pub., LLC v. Santiago,* No. 12–cv–7830, 2013 WL 1700929, at *5 (S.D.N.Y. Apr. 11, 2013). Thus, each of the eighth *Polaroid* factors weighs in favor of finding likelihood of consumer confusion.

In response to plaintiffs' extensive evidence of the likelihood of consumer confusion, defendants assert, again relying entirely on *Forschner,* that because third parties use the Red Mark, consumers are conditioned to disregard it as an indication of source or origin. As defendants cite no evidence of the extent of third-party use of the mark or lack of consumer confusion resulting therefrom, they fail to raise a triable issue of fact. Accordingly, the Court granted plaintiffs' motion for summary judgment on their federal infringement and unfair competition claims.

Finally, plaintiffs have established that they are entitled to summary judgment on their state law claims of infringement (Count V) and unfair competition (Count VI). As to the latter, "[t]he essence of an unfair competition claim under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of goods.'" *Horn's, Inc. v. Sanofi Beaute, Inc.,* 963 F.Supp. 318, 328 (S.D.N.Y.1997) (citation omitted). As discussed above, plaintiffs have unequivocally demonstrated both bad faith and likelihood of confusion. In order to prove a claim for trademark infringement under New York common law, plaintiff must show "that its mark is valid and legally protectible and that another's use of a similar mark is likely to create confusion as to the origin of the product." *Id.* at 328. For the same reasons as apply to plaintiffs' federal infringement claim, both these factors have been met. Accordingly, the Court found that plaintiffs are entitled to summary judgment on their state law claims.

For the foregoing reasons, the Court granted in full plaintiffs' motion for partial summary judgment and denied in full defendants' motion for summary judgment. The parties are directed to jointly call chambers within three business days of the date of this Memorandum to schedule further proceedings.